In my time today, I would like to cover two issues time permitting. The first issue is in regard to the 2013 assignment. And the second issue is regarding the fact that HSBC's claim for judicial foreclosure is time barred. So first, in regard to the 2013 assignment, the assignment did one of two things. Either the assignment affirmatively negated HSBC's standing to bring this case, or two, at a minimum, it created a fact issue as to whether there was a contract between HSBC and Mr. Crum. HSBC has spent a lot of time in their briefing addressing whether or not the 2013 assignment is properly before this court. So I'd like to briefly address that issue first. First, it's before this court because it's a public record. Both in our initial brief and in our reply, we've asked the court to take judicial notice of that. HSBC, in their briefing, actually acknowledges that this particular assignment was recorded in the property records, and they actually give some credence to the fact that this is a public record. So that's the first reason. The second reason it's properly before this court is because it was considered by the district court. In a 59E motion that was filed 28 days after the judgment in this case, the 2013 assignment was included, and these arguments were made. HSBC responded to the 59E motion, and in response, they included their allegations, their assertions on why they were still right, even in spite of the 2013 assignment. The district court, then in a memorandum order, a docket order, indicated that she was going to affirm her prior ruling because of the reasons that HSBC had argued in their response. So what that means is that the trial court was agreeing with HSBC's reasoning, and their reasoning included the 2013 assignment. So for those two reasons, I believe that the 2013 assignment is properly before the court today. As I mentioned, the 2013 assignment did one of two things. First, it affirmatively negated HSBC's standing to bring this case. It shows that everything associated with the loan, being the note and the deed of trust, were assigned not to HSBC, but to NationStar. So because the rights under the security instrument and under the note were transferred to NationStar, that would mean HSBC is not the proper party to bring this case. For that reason, there's no standing and no jurisdiction. The second thing, let's assume for a moment the court is not persuaded by that argument, the second thing that the 2013 assignment would have done was create a fact issue on who it was that would be the proper party and in privity of contract with Mr. Crumb. The assignment shows that it was transferred to NationStar. HSBC relies on an affidavit attached to their summary judgment motion that was interestingly signed by NationStar. So what you've got is the NationStar affidavit stating that it's within NationStar's business records that there is a security instrument. Now they interestingly never indicate who is in possession of the note or the security instrument, but they talk about it as part of NationStar's business records. So you've got that in the NationStar affidavit, yet we've got a 2013 assignment that shows everything was transferred to NationStar. But, well, help me on before and after the assignment. NationStar has always said they're the servicer, they don't own the note. There's no NationStar's position. The affidavit that HSBC attached to their summary judgment motion outlines the different servicing transfers that have taken place in regard to this instrument. Yes, it ends up with NationStar, and it ends up, no dispute, that it ends up with NationStar. That is in NationStar's affidavit, yes. And NationStar has always said, though it's a servicer, it doesn't own the note. I don't know that they have, I stand willing to— No, no, no, correct me if I'm wrong. I don't know that they have definitively stated that. I think everyone is in agreement that NationStar is stating that they're currently the servicer of the note, but here's why that is irrelevant. Because NationStar is not a party to this case. NationStar is not here. So let's assume for a moment that NationStar is the correct party, excuse me, that NationStar is the servicer and somehow has the authority. They're not here. They're not the ones that brought the claim. But if they are only the servicer, then their absence doesn't mean anything. And HSBC, for whom they are servicing it, would be the correct party, would it not? Yes. The issue, though, is that there's nothing in the record that shows that it's HSBC that is the owner or the holder of the note. The evidence that's in the record— Well, it was originally— Absolutely. So where is there evidence that that ceased? The evidence that it ceased is the 2013 assignment that says that the note and security interest—I want to make sure I read it exactly correct. It says all beneficial interest under the note and the deed of trust were transferred to NationStar. But what evidence is there to show where Bank of America got its interest? I wish there was something that I could point the court to. At this point, I can't point the court to anything. What we have is the 2013 assignment, and we have the affidavit from NationStar. So how exactly it got from Bank of America—excuse me, to Bank of America, I'm not entirely sure. But what we do know from the 2013 assignment is that that interest, all beneficial interest under both the note and deed of trust, were transferred to NationStar, who's not a part of this case. Your position depends on that language, all beneficial interests, even if you can't— there's nothing that disproves that the 2009 note ownership stays with HSBC and what's really been assigned is the service. Sure. The assignment says what it says, and it says that all beneficial interest was transferred. When you couple that with NationStar's affidavit that in no way says that HSBC is the holder or the owner of the note, I think that strengthens the argument that we've got a question here, and there's no evidence in the record that it was definitively HSBC that owned the note. Now, the evidence that HSBC relies on is a default notice. They say that because a default notice in passing mentions the fact that HSBC was the owner and holder of the note, as I believe what it says, that that means there's definitive proof that they were somehow the holder or owner of the note. But that's not the case, and again, case law indicates that it would be the last or the most recent owner or holder of the note. So I don't think anyone's disputing that at some point HSBC likely had the right to bring a foreclosure action, but that changed when everything, when all beneficial interest was transferred to NationStar, and so at that point, HSBC no longer has the rights that they had at some point in time, and the record does not provide any way to prove that HSBC currently is the owner or the holder of the note. Now, even aside from the 2013 assignment, let's put that aside for a moment, the claim still fails, and there's still a fact issue when you look at Mr. Crum's affidavit, because at that point, what you're doing is you're weighing the evidence. You have an affidavit from NationStar that states that somewhere in their business records, and I don't think it ever says that they have the actual copy of the note, but they refer to their business records, they being NationStar. And then you have Mr. Crum's affidavit, whereby he called HSBC to inquire about the loan, and HSBC told him that they have no record of his loan for HSBC. So what you're doing is you're weighing the credibility at the summary judgment stage of Mr. Crum versus the NationStar affidavit. When you're weighing the credibility, I'm sorry, I didn't mean to interrupt. No, no, you keep going, but the tolling aspect of the case is very complicated too. Yes, I'll move on to... As to both periods, so it'll help me... Yes, absolutely. I'll leave the standing issue there, but I think suffice it to say that even putting the 2013 assignment aside, there is a fact issue in regard to who it was that was the owner or holder of the note at the time that this case was brought. Moving on to the tolling issue, it's our position that HSBC's claims are time-barred. That was properly brought as a defense in the answer that was filed in this case. It was also raised at the summary judgment stage. Now, HSBC, for the first time in a reply, addressed two tolling arguments. Now, I don't think anyone's arguing that when you just look at the time of this case, from when the loan was accelerated to when the suit was filed, four years had passed. No one's disputing that. So it was at the reply stage when they first addressed these two arguments. The first issue they addressed for the proposition that the statute of limitations was told was that the independent lawsuit in regard to Texas Rule of Civil Procedure 736 somehow told the statute of limitations, but that just isn't the case. 736, nowhere in it does it indicate that it would toll the statute of limitations. Importantly, this court's holding in Jackson v. Johnson states that in order for a statute of limitations to be tolled, it must be impossible for a party to pursue its rights. But that's not the case when there's an independent lawsuit that prevents a 736 foreclosure. The lender still has options. They can bring a counterclaim. They can file a judicial foreclosure. In this case, they could have waited until the independent lawsuit was dismissed and then brought a 736 case. They could have done any of those things. What effect does Section 108 of the Bankruptcy Code have on the tolling issue? Nobody really mentioned it. So I think, and I assume you're referring to 108C? Yes, Your Honor. So 108C, I don't think comes into play at this juncture because 108C says it's going to be at the later of two things. First, it's going to be at the later of when the claim is actually told. And then second, of course, is a 30-day period. That one doesn't apply because it was more than 30 days after which the statute had run. So we're looking at the first part of 108C. In that instance, if you're looking at the calculation of the tolling period, I think what HSBC is asking this Court to do is go beyond anything that we've certainly found in the case law in regard to the calculation of days. We rely on the Texas Code Construction Act to say that you don't count the first day and you do count the last day. If for some reason the Code Construction Act doesn't apply, the bankruptcy code calculates time the exact same way. The federal rules calculate time the exact same way, where you do not count the first day and you do count the last day. Well, wait there. It's my understanding that the federal rule does count both the first and last day. So the federal rule, if Your Honor will allow, I'm referring to 9006. I'm sorry, bankruptcy rule 9006 is the calculation of time. The computation of time is under Rule 6 in the federal rules, and A1A says you exclude the day of the event that triggers the period, and then Part C says you include the last day, which is consistent with the Texas Code Construction Act, and then also the bankruptcy code as well. So, Judge Stewart, to address your question, I don't believe that 108C comes into play. I think that that would explain what would happen as far as the extension of time, but actually calculating the time, we can either look at the Code Construction Act, the bankruptcy code, or the federal rules and you get to the same conclusion. Now, I think it's important under that calculation also to notice that the case that HSBC is relying on, and I don't want to mispronounce it, but it's the Miscap versus Deutsche Bank. The issue with that case is they're asking this court to go beyond what happened in that case. They're asking this court to extend time beyond the actual time that someone would be in bankruptcy. So they're saying that you should enlarge the time over and above what was actually in bankruptcy, when the borrower was actually in bankruptcy. So when you look at the actual time, and bankruptcy court, obviously we have the exact time stamp so we can do that. When you look at the actual time, the borrower was in bankruptcy for 125 point some odd days. So the actual time is less than 126 days. When you go through calculation of the Code Construction Act and the others that I've mentioned, you also are going to get 126 days. Briefly before my time is up, I will address one more thing under Rule 736. I think it's important to look at the comment on Rule 736 because that's why I think that the case cited to by HSBC, which is the Reddick versus Deutsche case, should be treated differently than the others. I think there's a long line of Texas cases that indicate that an independent lawsuit that stops at 736 proceeding would not toll the statute. The primary reason, of course, is that 736 is a procedural device. It doesn't create a substantive independent remedy. And the comment in Rule 736 says this, Rule 736 is procedural only and does not affect other contractual or legal rights or duties. Any lien which can be foreclosed under Rule 736 may also be foreclosed in an action for judicial foreclosure. So I think that comment makes it clear that this is not an independent remedy. This is a procedural device. But it would toll it if their claim was built on a non-judicial, if the ultimate action was a non-judicial foreclosure measure. If it's non-judicial. When we look at what HSBC did, your argument has to turn on it being a request for judicial foreclosure. Well, I don't, if it was a non-judicial foreclosure, I wouldn't be going through Rule 736. Am I answering your question? I probably am not phrasing it quickly. I would have thought if it were non-judicial, you'd have to go through 736. If it's a non-judicial foreclosure, it would just be done pursuant to the Texas Property Code. And what do you think they did here? What was theirs? Well, initially they filed a judicial foreclosure in federal court. Yes. There was an independent lawsuit that stopped that. They came back and filed a second judicial foreclosure. Okay. But what if that second one, when we look at it closely, is not deemed by us to be a judicial foreclosure? Or do you think it indisputably is? I think based on the fact that the type of loan that it was, that it was a home equity loan, I think it would have to go through the judicial process. I don't think they could have done a non-judicial foreclosure on a home equity loan in Texas. Pursuant to the Texas Constitution. Okay. Thank you. You've reserved your rebuttal time. All right. Let's hear from counsel opposite. Cronan Wett. How do you pronounce it? May it please the Court? Before I get into my argument, I guess I'll continue along the line of Judge Higginson's questions. So Texas home equity loans require, by virtue of the Texas Constitution, an order before foreclosure can take place. That does not mean that there needs to be a full judicial, traditional judicial foreclosure proceeding. That's why the Texas Rules of Civil Procedure, Rule 736, sets out these expedited procedures where a lender can give less than full formal notice of a traditional lawsuit. You send it by certified mail. There's no discovery. There's no re-judicata effect. There's no motions for new trial. It's an expedited proceeding. As Ms. Pettit indicated, the comments talk about that being that it's a procedural rule and there's no substantive rights affected by those judgments. That's true. But that's because Rule 736 is this expedited proceeding. The point of that, Your Honor, is that these are still non-judicial sales. After Crum's lawsuit had finished, your action was a non-judicial 736? Because when you look at it, it seems sort of hybrid. So our lawsuit here that we filed on this particular case is a traditional lawsuit. So home equity lenders can utilize this expedited proceeding under Rule 736, and my client did try that before until they were circumvented in proceeding with foreclosure because of Mr. Crum's filing of his affirmative lawsuit, which under Rule 736.11 automatically abates that order. But the rules also allow Rule 735 of the Texas Rules of Civil Procedure also allow for the filing of a traditional judicial foreclosure lawsuit. And that can be done either a few ways. One is a judicial foreclosure suit where the lender seeks a foreclosure of the lien in that lawsuit and a sale of the property by the U.S. Marshal or the Sheriff, whichever the appropriate law enforcement official is. Or the lender can seek a declaratory judgment confirming that there's been a default on the trust and a judgment allowing it to proceed with a trustee sale or non-judicial sale. And actually, Mr. Crum in his brief identifies the Santiago versus Central Mortgage case where the Dallas Court of Appeals confirmed that a lender can choose that declaratory judgment right option and not a judicial foreclosure where the lien's foreclosed and law enforcement does a sale. While you're starting back, would you tell me the source of the proposition that you count both the first day and the last day as opposed to Texas' ignoring the first day? Yes, Your Honor. So as Judge Boyle indicated in her opinion, it's Rule 108, Bankruptcy Rule 108 that applies here. So the Texas Construction Act really is inapplicable, but I think that's kind of a distinction without a difference. So with the usual rule of counting days, the Federal Rules of Civil Procedure, you also don't count the first day and you count the last. So for instance, if a lawsuit were served on the first day of the month, the defendant has 21 days thereafter under Rule 12 to file his response to pleading. You don't include the first day, so that response to pleading is due on the 22nd day of the month. But that's just the typical way of counting days, and it's very simplistic. It's got nothing to do with these tolling theories involving the bankruptcy stay. If you're just counting days to file an answer or response to pleading, nothing stops you on that 22nd day from filing your answer. When you're talking about bankruptcy tolling, the plaintiff is stopped from exercising his rights on the day of that bankruptcy filing and on the day of dismissal. So both days are blocked out from when a lender, how the lender can act, or the plaintiff can act in a personal way. By operation of federal law or federal law referring to state law? By operation of Rule 108C. Okay. Statute, Section 108C. It's a, the point of the tolling provision, Your Honor, is that when you are stopped from being able to exercise your rights, then you don't count that day. Mr. Crone tries to argue that you look at the time of day when that dismissal order might have been entered. That's slicing it way too thin. If you're blocked on that day from exercising your rights, your limitations clock doesn't begin to run again until the next day. So that's why we believe that Judge O'Connor. What's the best case for that, that we don't thin it down to hours, we look at days? I don't have a particular case talking about that, Your Honor, but I would refer to Judge O'Connor's opinion in MISAC where he had, he used that same rationale. This very same argument was presented to him. Do you include the first day and the last day or just the first day? And Judge O'Connor said, look, if there's a, if the automatic stay is in effect and the plaintiff cannot exercise his rights on that first day and the last day, then you include both the first day and the last day in the tolling calculation. What is 108C? From the U.S. Bankruptcy Code, and it talks about that when a plaintiff has filed a lawsuit and the defendant files bankruptcy, then 108C says in part that the limitations period on the plaintiff's case is tolled during dependency of the bankruptcy case. Told according to what body of law? Federal or state law? Federal, it's the statute itself, Your Honor. And would that, under 108C, it would not count the first day or it would? Tolling, the first day and the last day are included in the period of time the limitations is tolled, as Judge O'Connor indicated in the MISAC opinion. But, Judge Higginson, it's not just Section 108C. Texas case law also recognizes tolling to independency of the bankruptcy case. So, yeah, the Bankruptcy Code specifically says that the Texas case law also recognizes that tolling theory. I thought 108C was controlling, but counsel opposite says it doesn't come into play. So, we've got law on 108C. So, my starting premise, 108C, Federal Law of Bankruptcy Code was the controlling statute, you know, interpreting whether there's a tolling of the statute of limitations we have cases. So, I'll confess confusion getting back and forth into the, what is it, the Texas Code of Construction. And, you know, I just thought one-on-one the whole premise of, quote, supremacy was that you're not trying to interpret these overlapping doctrines. But, if we're within the Bankruptcy Code, you know, that's what we're looking at. But, I will confess confusion here, you know, when we're down to talking about whether it's the first day or the last day. I mean, it's really ground quite thinly. I mean, the cases seem more comfortable, but that looks like where we are. So. Your Honor, our position is that 108C does apply, but also the Texas case law talking about tolling during the course of bankruptcy is perfectly consistent with it. It helped me because it's just the fourth case of the last day. Did you both brief 108C? I don't think so. I don't think anybody specifically talked about 108C. Or didn't either. So, neither of you. So, that's maybe a little bit why, at least I, too, am a bit confused. You're saying it's the controlling statute, but it hasn't been briefed by anyone. It wasn't elaborated by the district court. Judge Boyle did utilize 108C, Your Honor, in her opinion. It's in the footnote. Again, maybe I'm thick, but using 108C, do you count the first day and the last day, or do you omit the first day? You include both the first day and the last day, the reasoning being that the plaintiff is precluded from moving forward on both of those dates. So, does that give us 126 or 127? 127. Because you count both the first day and the last day, Your Honor. So, it was a timely, then? Yes. Just looking at the bankruptcy tolling, yes. The abandonment of acceleration with the new notice of default and attempt to accelerate was timely. Okay. And just that chronology a little bit, Your Honor, is that there was a notice of acceleration in, on June 10th of 2009, and then there was a notice of default and attempt to accelerate on October the 15th, 2013, a little more than four years later. It's a four-year limitations period under Section 16.035 of the Texas Civil Practice and Remedies Code. It's 127, a year plus 127 days, and so that's what we're looking at. We're not really, even though Judge Boyle talks about the day the suit was filed, but that's not really the applicable provision, because clearly that October 15th, 2013 notice of default and attempt to accelerate under Boren, abandon the prior acceleration, so, and then after the October 15th, 2013, this lawsuit was filed within four years of that. So, that's not an issue. It's just those one year plus 127 days that are an issue. If you prevail on this, then there's no reason to get into the difficult Reddick distinction as to whether there, you had, your client had to anticipate and go early with the judicial foreclosure, right? That's right, Your Honor. The bankruptcy tolling gets us there in and of itself, and we don't have to go to Reddick. Were you going to address the, whether, you know, there's an interest here, and there is a little bit of oddity in Bank of America's assignment of all interests to NationStar, implying that the note was assigned also? Yes, Your Honor. So, in our motion for summary judgment, well, first of all, I would say that this Court has recognized that there are multiple ways for mortgage lenders to establish standing. I'm referring to the SGK properties versus U.S. Bank case 881F3R933 from earlier this year, and these methods are independent. They don't depend upon each other. Each one is sufficient to establish standing. So, the mortgage lender can be a holder under the Texas CCC. It can be the last assignee of record, as indicated in the Texas Property Code, and it also can be an owner, as determined by common law principles. In our motion for summary judgment, we proved up all three of those. We had the original note endorsed to blank. We had a launch where it was then specially endorsed from that first assignee over to my client, HSB Bank, as trustee, so we did establish our position as a holder. And really, any discussion about a transfer or assignment that's recorded in the real property records has no bearing on that, and the SGK case goes right to that. In the what case? The SGK case from this Court. Okay, so how could you explain the language in the Bank of America 2013 assignment? How do you explain the broad language? It goes to what this Court has talked about previously with Ms. Pettit, which is that NationStar was acting as the servicer for HSBC Bank as trustee. And really, Your Honor, these issues that Mr. Crum is raising in this appeal about standing, it's not about standing. It's about real party and interest under Rule 17A for the Federal Rules of Civil Procedure. The danger that Mr. Crum is talking about is the potential for double liability, and really, that's a waivable objection. This Court has said itself that these issues need to be raised timely, and I'm talking about the Ensley v. Cody Resources case, 171 F. 3rd, 315, from 1999. But their first point was the District Court went ahead and considered the 2013 assignment anyway. It did consider it. And that's not necessarily true, Your Honor. It was, in the motion for new trial, that assignment was raised. And we argued in response, one, it was too late. Secondly, even if it wasn't too late, it doesn't change anything. Right. And so, and then... I thought the District Court embraced only the second. The Court generally ruled that the motion should be denied. Based upon our arguments. And one of our arguments was waiver. That it came too late in the motion for new trial. So that assignment, Your Honor, just, first of all, the point I'm making about Rule 17A, as far as like real party and interest, I'm trying to make the point that it did come too late in a motion for new trial. It comes too late in this appeal. This is not a question of subject matter jurisdiction or personal jurisdiction based on an improper party asserting standing. The facts establishing standing are determined at the time of the lawsuit is filed. And it's a criminal case, Stigall v. United States, talks about unchallenged jurisdictional facts are binding. So the parties, the plaintiff proves up its right to proceed in the case during the course of the litigation. And if those facts are not challenged, then the defendant is barred from raising those later on. In our case, we proved up our standing to proceed with foreclosure as the owner, as the holder, and as the last act of the New York record. When the plaintiff, when Mr. Crum comes back later on with this untimely assignment that was recorded in the real property records, that goes to whether there was another real party of interest that should have been brought in. Really, that's HSBC Bank USA's, USA's trustee's agent. It's just an agent. It doesn't change anything. In our affidavit, we said that NationStar is a servicer for HSBC Bank as trustee. If Mr. Crum wanted to say HSBC Bank as trustee, you really shouldn't be doing this. It should be NationStar because of this assignment, which had been recorded before the lawsuit was even filed. Mr. Crum needed to bring that up early on under Rule 17a, that there was lacking in this case a real party of interest. But it doesn't matter because there's no danger of dual liability here. There's no, nothing's going to befall Mr. Crum because of this. It's either HSBC Bank as trustee getting the judgment of foreclosure, or it's the agent, NationStar. And like I said, these different ways of approving of standing all operate independently of each other. We proved up, we're the holder. That's really not, it's not challenged in this proceeding. There was some mention in the reply about there's not evidence of HSBC Bank as trustee having physical possession of the note for, as a, I'm sorry, the AWMC, the prior owner of the note, Merrill Lynch, having the physical possession of the note. But again, that comes too late as well. And besides that, the summary judgment records show that HSBC Bank as trustee had physical possession of the note through its agent and servicer, NationStar. So there's really no challenge to that. There's really no challenge as far as like the ownership. This court has said you can prove upstanding as a mortgage lender by common law principles of assignment. In our summary judgment evidence, we have the affidavit or declaration from a customer representative talking about the history of the assignments from WMC to Merrill Lynch to HSBC Bank as trustee. As therefore, HSBC Bank as trustee was the common law owner of the loan agreement and could enforce it, including the deed of trust. Now, going into Rettig, that has come up and we believe that we're correct on that as well. And it goes back to the whole CASPER rule. CASPER is well established. Lenders are not required to file a counterclaim for foreclosure when a lender files a suit challenging a loan. You have Rule 736.11 of the Texas Rules of Civil Procedure, which says that when an affirmative lawsuit is filed by the borrower, then that blocks the prior 736 order that was entered. It's abated. It's to be dismissed. What Mr. Trum would have the court believe is that when he's filed his lawsuit and it's pending, then in violation of CASPER, HSBC Bank as trustee did have an obligation to file a counterclaim for foreclosure. And because it didn't, then limitations continue to accrue. Well, if CASPER means anything, it means that limitations has to be told during dependency of the borrower's affirmative lawsuit. And the Rettig says that and the case law, I think, is the cases that I've talked about that are clear, that the lender can't be forced to make that decision because of a limitations concern. If CASPER really exists, as far as I, um, as this court indicated in the Nuttery case, the lender is not, cannot be forced to make that rent, to make that election of pursuing a judicial foreclosure if it does not want to. It can pursue the Rule 736 option and try to proceed just on a normal trustee suit. So you think the cases that have, that have criticized Rettig are wrong in terms of it being applied to non-judicial? By its own terms, it's saying this doesn't have legal rights. So that wouldn't stop you from having filed. I guess you accept that. You could have filed the judicial foreclosure order, but you just can't be forced to. That's your position? It is, Your Honor. In all candor, this lawsuit is that judicial foreclosure. I mean, we filed a lawsuit here under that Santiago v. Central Mortgage case. There's also a Metcalf v. Wilmington case from the Austin Court of Appeals talking about a lender coming in and being able to get a declaratory judgment allowing it to proceed with a non-judicial sale. So yes, we could have done that, and eventually we did. But CASPER says that lenders aren't required to do that. The borrower can't push the lender into making that, to making, really making no choice, but having to file that lawsuit. It can sit back and do the Rule 736 expedited proceeding and do a non-judicial sale, a trustee sale. I know it's confusing because 736 is a judicial process, but it's not a judicial foreclosure. It's just a gatekeeping function that the Texas Supreme Court created because with home equity loans, the Constitution says there has to be a court order before the lender can proceed to foreclosure sale. All right. Thank you, Your Honor. Thank you, sir. Ms. Petty, you can reserve your rebuttal time. May it please the Court. I want to go back briefly to Rule 108, Judge Weiner, that you have addressed. And in looking at first as an initial issue— Let me say this. I already determined that I'm going to do this. So if you want to, you can use your rebuttal time on the other. I've looked at all three of these briefs, the opening briefs, the replies, etc. Neither one of them cites 108C, period. So I'm going to direct at the end of the argument that both of you filed simultaneous letter briefs addressing the applicability or not of 108C on this tolling matter. There are cases in there. So given that you have to do that for simultaneous, that'll educate us. It's not in the brief. The district court obliquely. So that'll give us, you know, fresh around the edges on the tolling issue. So given that I'm saying you're going to have to do that if you want to use your rebuttal time to speak to that, you can, or if you want to use it to address some of the other matters. Yes. And thank you, Your Honor, for bringing that up, because that was going to be my point that 108 has not been raised. What I do want to briefly address is that what we're talking about here actually is not federal substantive law. We're talking about Texas state substantive law. And the cases that we have cited in our brief, first is this court's ruling in Nationwide v. Velo, which says when you're looking at Texas substantive law, Texas, you need to apply Texas court's statute of limitations. And then in the Salat v. Kincaid case that we cite, that indicates the Texas Code Construction Act is what determines the statute of limitations under Texas law. So that's how we get from point A to point B, that the Code Construction Act applies. And the only thing I deduce from that is that the two of you don't agree. Yes, Your Honor. The only thing I got for that, you may be right, but it's definitely, you know— Well, let's— I mean, I hear you. I'm not pushing back on you. I'm just saying that's what you say. It's Greece, and so, you know, that's why we're here. That's why we're here. One other thing, Your Honor, 108C—and this goes back to Judge Weiner's question that I don't know that we fully answered—is that 108C addresses the end point of the statute of limitations. So I would assert— That's what you said, but when I read it down here, I don't see that. That's why I want it brief, because in reading it, it doesn't straight up just say that. And, you know, it talks about the tolling. I mean, I hear you. It's good advocacy. Don't get me wrong. But in and of itself, at least I don't. I don't know a lot about bankruptcy, but I just don't see where it per se says that. You may be correct in that, and I heard you say that. But, you know, the statute, you know, it's kind of there, because the two of you are definitely not saying the same thing. It can't be both ways that the state statute is what—maybe it is. I don't know. Yes, Your Honor. We'll certainly address that in some briefing after the fact, in addition to the— And I didn't mean that to suggest the other issues in the case aren't before us. I was just talking about that tolling, since y'all are disagreeing on the one day. I mean, that issue is the one day. Well, yes, one day and actually a couple of hours, because I think that's the furthest that we've seen any court go, certainly that we can find on our end, is that their best case scenario would be the actual time. And I think even what they're looking for here is an extension beyond what we found is the best case scenario, which would be the actual time. So in this case, the actual time is less than 126 days. But again, I know we're going to do some briefing on that issue. Going back to the first issue, I just want to be clear that we do absolutely dispute whether or not they are the owner or holder of the note. We've made that clear. We think that the record is completely devoid of evidence that shows that HSBC was the proper party, that they're either the holder or the owner. We think the Nation Star Affidavit does not rise to the level of creating any facts to be considered that it would be HSBC that's the correct party. If anything, it's Nation Star. And what HSBC is asking this court to do is to conflate what it is that a lender and a servicer are. They're trying to say that they're, you know, as long as Nation Star had the right, then it's okay that HSBC went out and did this. But that's just not what the evidence shows. The evidence shows it's distinct that HSBC had all of the rights, excuse me, that Nation Star had all of the rights, and for some reason, HSBC went back and foreclosed. So they're asking for this extension. There has to be some limiting principle here that prevents us from conflating what it is that a lender and a servicer does. And I think that this court should reverse the case on that ground alone. All right. Thank you. Thank you, Your Honor. It's an eerie court. We just love getting ground down into Texas law, and a bankruptcy case couldn't be more scintillating to end the day on Thursday. But we'll dig it out and figure it out. So specifically, the directive is both of you to file, oh gosh, 10 days. Does that mean we count today, or does that mean we count tomorrow? You can take the more elastic version of it if you need the extra day. We won't chomp down on you. But 10 days, a letter brief, you know, on the tolling issue, specifically the applicability of 108C or not, or whatever else you want to say on that issue. But file it with the clerk, and then they will get it to us. After we get those, then the case will be submitted, and we'll, you know, figure it out and decide it. Okay? All right. Thank you both. All right. This concludes the cases for oral argument for this panel, along with the cases.